## HARRIS *v.* DAVIS.

*(Circuit Court, W. D. Texas, El Paso Division.* October 10, 1890.)

1. CONTRACTS—CONSTRUCTION.

   Plaintiff and defendant. stockholders in a corporation, agreed that, in case the corporate property should be sold under a certain trust-deed, they or either of them would buy it at the sale, for their joint interest, each to pay in proportion to the stock owned by him, or be barred from any share. Defendant purchased the property at the sale, and took a bill of sale to himself, and plaintiff failed to pay any part of the purchase price. *Held,* that defendant took an absolute title for his own benefit, but if he subsequently agreed with plaintiff that each should try to sell the property, and divide the proceeds under the former agreement, and that, if they failed to sell within a reasonable time, payment should be made as provided in the former agreement, the title inured to both in proportion to their respective amounts of stock.

2. SAME.

   If such second agreement was made, and the property was afterwards sold by defendant, the valuation placed by him and the purchaser from him at that time on certain corporate stock received in payment for the property is binding on both him and plaintiff.

3. RELEASE AND DISCHARGE—ESTOPPEL—DECEIT.

   A receipt given by plaintiff to defendant in reliance on representations made by defendant to him as to the amount of the consideration which defendant received for the property does not estop him to reopen the account between himself and defendant, and recover the amount found justly due him, if defendant's representations were false.

At Law.

*Jennings & Fowlkes,* for plaintiff.

*Davis, Beall & Kemp,* for defendant.

MAXEY, J., *(charging jury.)* This suit is brought by the plaintiff to recover of defendant the sum of $4,668.88, with interest, which sum the plaintiff claims as his interest in the proceeds of a sale of cattle and other property sold by the defendant to one I. A. Stevens. The defendant relies upon several defenses which will be hereinafter called to your attention. The property sold by the defendant to Stevens was originally owned by a corporation known as the "Mexico Cattle Company," and in order to secure an indebtedness which amounted, principal and interest, to $23,329.44 on the 10th of March, 1886, the cattle company, on the 22d of September, 1885, executed a deed of trust, embracing its cattle and other property, to J. A. Peacock, as trustee, giving Peacock, or his substitute trustee, the power to sell the property in accordance with the terms of the instrument. The debts of the company not having been paid at their maturity, the property was advertised for sale by Swinney, the substitute trustee, and duly sold by him on the 6th day of Febru-

ary, 1886, to the defendant, and a bill of sale was executed by the trustee to defendant on the 10th of February following. The property thus conveyed to the defendant by Swinney was subsequently sold by the defendant to I. A. Stevens, and it is important for you to determine:

1. Who was the real owner of the property under the bill of sale executed by the trustee Swinney to defendant? Did that sale vest in the defendant the absolute right, title, and ownership of the property, or did the defendant purchase the same at the trust sale for the joint benefit of himself and plaintiff? If the defendant, at the trust sale, purchased the property for himself alone, and not for the joint use and benefit of himself and plaintiff, then the plaintiff could have had no interest in it at the date of defendant's sale to Stevens, and he would not, therefore, be in a position to complain whether the defendant made or lost money in his trade with Stevens. If, however, the defendant bought the property from the trustee on the joint account of himself and the plaintiff, then the plaintiff had an interest in it, although the bill of sale was executed to the defendant only, and it was the duty of defendant, in subsequently selling the property, to fairly account to plaintiff for his interest in the proceeds of sale. To reach a conclusion in reference to the character of title held by the defendant under the trust sale made by Swinney, it will be necessary to examine the written agreement entered into between the plaintiff, the defendant, and Hendrix, on the 22d of September, 1885, and ascertain from the testimony what passed between the parties touching any changes which they may have agreed to make in reference to the terms of that agreement. That agreement reads as follows:

"We, the undersigned, stockholders in the Mexico Cattle Company, do hereby agree that, in case the cattle of this company shall be sold under deed of trust made this day by said company, we, or either of us, will bid the amount of the debts of said company so secured, and, should either of us buy the property at said sale, it is understood and agreed that we buy for our joint interest as represented by our several stock in said company, and we each will pay in cash or put in hands of purchaser good bankable collaterals in the proportion of our stock in said company. Any member failing to notify the others by the tenth day before the sale aforesaid takes place of his desire and intention to take advantage of the privilege herein granted, or failing to place in the hands of the purchaser, according to this instrument, his *pro rata* share of the cash or good bankable collaterals, he shall be forever debarred from enjoying the rights granted by this writing."

The agreement above read to you was binding upon all the parties alike, and, in order to claim its benefits, each was required to perform the conditions imposed upon him by the instrument, unless the terms of the agreement were extended, or performance of its conditions waived, by a subsequent agreement entered into between plaintiff and defendant. The plaintiff insists that there was such subsequent understanding and agreement made by him and defendant, and his claim in that respect is based upon the following allegations of his petition:

"That, prior to said mortgage sale, propositions were being made *pro* and *con* between the plaintiff and defendant for the sale of their respective inter-

ests in the Mexico Cattle Company, looking also to and including in the same the payment of said mortgage indebtedness, which said propositions were kept up, up to the time of said sale, but which did not result in any agreement or settlement, and the same was kept up for several days after said sale, but without result; that after the failure of said propositions of sale and purchase as aforesaid between plaintiff and defendant, and after said mortgage sale, it was understood and agreed between plaintiff and defendant that each would try and make a sale of the property, and, if successful, that the debts would be settled, and the surplus, if any, divided between the parties under their said agreement of September 22, 1885, but, if they failed to negotiate a sale within a reasonable time thereafter, (there being one or two sales contemplated at the time,) then the cash or collaterals would have to be put up by the parties under their said agreement of September 22, 1885."

It is conceded by the parties to this suit that the defendant bid in the property at the trust sale by Swinney at a price equal to the amount of the Mexico Cattle Company's indebtedness, and that a bill of sale was executed to him by the trustee; and the testimony, without contradiction, clearly shows that the plaintiff did not place in the hands of the defendant, who was the purchaser at the sale, the cash or bankable collaterals provided for in the agreement of September 22, 1885. And you are instructed that the sale by the trustee and his bill of sale to the defendant vested in defendant an absolute title to the property involved herein, unless you find from the testimony that the subsequent agreement, as claimed by the plaintiff in his petition, was actually made and entered into between him and defendant. If such subsequent agreement was made, then, although the defendant purchased the property at the trust sale, and the title was executed to him, he would not be permitted to claim and hold it for himself alone, but the title would inure to the plaintiff and himself in proportion to their respective interests as provided in the written agreement of September 22d. On the one hand the plaintiff strenuously insists that the new agreement was made as alleged, and on the other, the making of such new agreement is urgently denied by the defendant. A sharp conflict, you observe, arises between the parties at this point, and it is your province, gentlemen, to determine the existence or non-existence of the new agreement as claimed by the plaintiff. That question you must answer to your own satisfaction from an examination of all the facts and circumstances admitted in evidence; and, in reaching a conclusion, you may consider not only what occurred between the parties at the time of and prior to the sale, but you may also look to their conduct subsequent to the trust sale, and their dealings with each other, regarding the management, ownership, and disposition of the property, as such conduct and dealings may tend in some measure to aid you in arriving at the true meaning and intention of the parties. If you conclude that the new agreement, as insisted upon by the plaintiff, was not made by the defendant, then you are instructed that the absolute title to the property, under the sale and deed made by the trustee Swinney, vested in the defendant alone for his sole use and benefit, and your verdict should be in his favor. But, if you determine that such new agreement was made and entered into by the

plaintiff and defendant, then the defendant held the title to the property, as you have already been instructed, for the benefit of himself and plaintiff in proportion to their respective interests as shown by the agreement of September 22d, and in that event it will be your duty to consider other questions arising in the case.

2. The defendant admits that he sold the property to I. A. Stevens about March 1, 1886. And under the terms of the verbal agreement, referred to in the preceding clause of this charge, if you find as a matter of fact that such agreement was made, it was the duty of defendant, after payment of the debts of the Mexico Cattle Company, to divide any remaining surplus, arising from the proceeds of such sale, ratably between himself and plaintiff in proportion to their respective interests. It hence becomes necessary to determine the consideration that passed to the defendant in the sale of the property made by him to Stevens. Upon this point it is alleged by the plaintiff in his pleadings that said property was negotiated in said sale to Stevens at $35,000 for the cattle, horses, etc., and, in addition, Stevens assumed the payment of certain lease moneys, which the Mexico Cattle Company had obligated itself to pay, amounting to $10,000, making, in the aggregate, $45,000, as the true consideration paid by Stevens for all of said property. On the other hand, it is averred by the defendant in his answer that he sold the property to Stevens for the actual consideration paid by Stevens of 27 shares of the capital stock of the Independence Cattle Company of the par value of $1,000 per share, and that the defendant agreed to take said stock at the value of $27,000; and, further, that he sold said property to Stevens for the actual consideration of $27,000, as agreed upon at the time of the sale, to be paid in the stock of said Independence Company, and for the further consideration that Stevens agreed to assume the payment of $10,000, on account of certain leases which the Mexico Cattle Company had, by contract, bound itself to pay. In order to arrive at a satisfactory conclusion as to the real consideration of the sale made by the defendant to Stevens, it will be necessary for you to examine all the written and other evidence before you, and from it determine what the true consideration was. Was it $35,000 for the cattle, etc., and $10,000 lease money, assumed by Stevens, as insisted by the plaintiff? Or was it 27 shares of the stock of the Independence Company taken at $27,000 and $10,000 lease money assumed by Stevens? In this connection you are instructed that the true consideration of the sale is the one agreed upon by the parties at the time the sale was made. If it was agreed between defendant and Stevens, at that time, that the former should take the Independence stock at a valuation of $27,000, that agreement would be binding upon the plaintiff. And so, if it was, at the time of the sale, agreed and understood between the parties that the defendant would receive the Independence stock at a valuation of $35,000, the defendant would be equally bound by the agreement now, notwithstanding the stock of that company may have subsequently declined in value. The testimony as to the consideration of the sale made by defendant to Ste-

vens is conflicting, and it is your duty to examine it carefully with the view of reaching a just conclusion.

3. As a further defense to the suit, it is averred in the answer of defendant that on the 27th day of March, 1886, he (the defendant) paid to the plaintiff the sum of $2,000 in full satisfaction and discharge of the cause of action set forth in the petition, and of all damages sustained by the plaintiff by reason thereof, and that the plaintiff accepted said sum of $2,000 in full satisfaction and discharge of said cause of action, and of all damages sustained by him, and of all claims or demands against the defendant. In support of these averments the defendant introduced in evidence, with other testimony, a written receipt bearing date the 27th day of March, 1886, executed by the plaintiff, in the following words:

"$2,000.00.                    COLORADO, TEXAS, March 27, 1886.

"Received of A. F. Davis through the hands of E. F. Swinney the sum of two thousand dollars for sale of Mexico Cattle Company.

[Signed]                              "JOHN HARRIS."

The plaintiff admits the execution of the receipt, and that he received the sum of money stated, but denies the legal effect of the paper as claimed by the defendant; and the plaintiff further maintains that he is not estopped from reopening his account with the defendant on account of the receipt executed by him, for the reason that, at the date of its execution, he was, as he alleges, through the false and fraudulent statements of defendant, in ignorance of the real consideration paid by Stevens to the defendant, and that he then believed, as he had been informed by the defendant, that the true consideration was $27,000, and the assumption by Stevens of the payment of $10,000 lease moneys, when in truth and fact he alleges that he thereafter learned the true consideration passing from Stevens to defendant was $35,000, and the assumption by Stevens of the $10,000 on account of leases. In the absence of fraud on the part of defendant, the receipt would clearly be binding upon the plaintiff, and he would not be permitted to reopen the account closed by the execution of the receipt. But if the defendant had deceived and misled the plaintiff as to the real consideration of the sale to Stevens, and if he falsely and fraudulently represented to the plaintiff, prior to the execution of the receipt, that he had sold the property to Stevens for $27,000, and that, in addition, Stevens was to assume the payment of lease money of $10,000, when in truth and fact the consideration of the sale was $35,000, and the assumption by Stevens of the payment of lease money to the extent of $10,000, and if the plaintiff, when he signed the receipt, believed that the statements of the defendant were true, then you are instructed that the plaintiff would have the right to reopen his account against the defendant, and to recover the sum which might be found due him upon a fair and just accounting between himself and the defendant. If the defendant misled and deceived the plaintiff by making to him false statements in reference to the true con-

sideration of the sale made to Stevens, the law would not permit him to reap benefit or advantage from such statements to the prejudice of the plaintiff. But, gentlemen, it is your province to determine whether the defendant practiced a fraud upon the plaintiff by making false statements to him regarding the consideration of that sale, and you must look to the testimony in the case to satisfy yourselves on that point. The plea of limitations has been abandoned by the defendant, and the ssue arising thereon will not be submitted for your consideration.

4. If, under the testimony and charge of the court, you should conclude to find a verdict for the plaintiff, you will then proceed to determine the amount to be awarded him. The testimony shows that, as an original stockholder, he was entitled to a four-sevenths interest in the Mexico Cattle Company; that the debts of the company amounted to \$23,329.44; and that he received from defendant, prior to the institution of this suit, \$2,000. Plaintiff would, of course, not be entitled to any part of the proceeds received by defendant from Stevens as the consideration of the sale made to Stevens, until all the Mexico Cattle Company debts were paid. After the payment of those debts, if there was a surplus left from the proceeds of sale received by defendant, the plaintiff would be entitled, if to anything, to four-sevenths of that surplus, less a credit of \$2,000, which he has received, with interest on the amount so found at the rate of 8 per cent. per annum from the 27th day of March, 1886. In direct connection with the amount of any verdict you see proper to find, you will recall the testimony bearing upon the sale by defendant to Stevens, its consideration, and the price at which the 27 shares of the Independence stock was received by defendant at the time of sale, and frame your verdict accordingly. If the 27 shares of Independence stock were received by defendant in his sale to Stevens at an agreed price and valuation of \$27,000, or less, then the plaintiff would not be entitled to a verdict for any amount. But, if the 27 shares of Independence stock were received by defendant from Stevens at the price and valuation agreed upon at the time of sale of \$35,000, then, if your verdict be in favor of the plaintiff, you will deduct from the \$35,000 the Mexico Cattle Company indebtedness of \$23,329.44, and award the plaintiff four-sevenths of the remainder, less \$2,000, with interest on the amount so found at the rate of 8 per cent. per annum from the 27th day of March, 1886. If you conclude that the plaintiff ought not to recover, you will simply say: "We, the jury, find for the defendant." You are the judges of the credibility of the witnesses, and of the weight you may attach to their testimony, and you are authorized in suits of this character to base your verdict upon a preponderance of the evidence. Give the case, gentlemen, that calm consideration which its importance demands, and let your verdict be responsive to the law and the testimony.